# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

---

**CLARENCE BORNS**,

                Petitioner,

vs.

**TROY CHRISMAN**,[1]

                Respondent.

Case No. 2:17-CV-13694-TGB

HONORABLE TERENCE G. BERG

**OPINION AND ORDER GRANTING CONDITIONAL WRIT OF HABEAS CORPUS**

---

Petitioner Clarence Borns, a Michigan state prisoner, has filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging his convictions for assault with intent to murder, assault with intent to do great bodily harm less than murder, being a felon in possession of a firearm, and possession of a firearm during the commission of a felony. Petitioner raises ten claims for relief. Having carefully reviewed the record, the briefs of the parties, and the relevant law, the Court holds that defense counsel was ineffective for failing to investigate and call crucial witnesses—a failure that prejudiced the

---

[1] The proper respondent in a habeas case is the custodian of the facility where the petitioner is incarcerated. *See* Rule 2(a), Rules Governing Section 2254 Cases. Thus, the Court substitutes Troy Chrisman as the Respondent.

defense. The state court's rejection of this claim was an unreasonable application of clearly established Supreme Court precedent.

Accordingly, for the reasons stated below, the Court will **GRANT** a conditional writ of habeas corpus.

## I. Background

Petitioner was charged in Wayne County Circuit Court with three counts of assault with intent to commit murder related to a single incident involving three complainants—James Rankin, Evelyn Hardwick, and Latisha Hardwick. A jury convicted Petitioner of assault with intent to commit murder as to Rankin, Mich. Comp. Laws § 750.83, the lesser included charge of assault with intent to do great bodily harm less than murder as to Evelyn Hardwick, Mich. Comp. Laws § 750.84, and acquitted Petitioner as to all charges related to Latisha Hardwick. He was also convicted of being a felon in possession of a firearm, Mich. Comp. Laws § 750.224f, and possession of a firearm during the commission of a felony, Mich. Comp. Laws § 750.227b. On August 19, 2013, Petitioner was sentenced as a third habitual offender to 20 to 30 years for assault with intent to commit murder, 10 to 20 years for assault with intent to do great bodily harm, 5 to 10 years for being a felon in possession, and 2 years for felony firearm.

2

As recited by the Michigan Court of Appeals, the following facts were adduced at trial and are presumed correct on habeas review. *Wagner v. Smith*, 581 F.3d 410, 413 (6th Cir. 2009) (citing 28 U.S.C. § 2254(e)(1)).

> The case arises from a shooting that occurred on December 9, 2012 in Detroit. That morning, Evelyn [Hardwick] discovered broken windows in two of her homes. Her son, Rankin, believed that his former girlfriend, Carlyssa Borns, was somehow involved in causing the damage. Evelyn, Rankin, Latisha, and Evelyn's other daughter, Lativia Hardwick, went together to the Borns' family home to get more information. They drove and parked several houses away from the home. Members of the Borns family, including defendant, were outside their house. Evelyn and her two daughters testified that defendant admitted responsibility for breaking the windows, then pulled out a gun and fired a single shot into the air. They further testified that defendant then chased them and shot at them, with Rankin being shot twice in the leg. They ran to a neighbor's home for help and defendant left the scene in a nearby vehicle. In separate photographic lineups, all four witnesses identified defendant as the shooter.
>
> At trial, Detroit Police Officer Eric Richards testified that Lativia's car showed signs of a shooting—a shattered window, a bullet hole near the trunk, and blood in the back seat. He also testified that he visited Rankin in the hospital and described his gunshot wounds.
>
> Rankin died shortly before trial, although apparently not from his wounds suffered in the instant shooting. The prosecution therefore moved to admit Rankin's preliminary examination testimony at trial. Over defense objection, the trial court ruled

3

that Rankin was unavailable pursuant to MRE 804(a)(4) and admitted the testimony, which was read to the jury. This included Rankin's testimony that defendant shot him twice in the leg.

*People v. Borns*, No. 318376, 2014 WL 7442251, at *1 (Mich. Ct. App. Dec. 30, 2014).

Also relevant to a full understanding of the events of that day is James Rankin's behavior earlier in the morning. Rankin testified that, approximately 30 to 60 minutes before the shooting incident, he drove to the Borns' home where he knew Carlyssa Borns[2] (his ex-girlfriend and the mother of his child) sometimes stayed because he suspected she was involved in breaking the windows. ECF No. 23-2, PageID.1436, 1453, 1459, 1466. He drove there alone. *Id.* Rankin drove to Borns' house even though he knew that Carlyssa had obtained a Personal Protection Order ("PPO") against him and he could not contact or come near her. *Id.* at PageID.1451-52. He did not exit the car because he knew a crowd of people were at the home based on the number of cars outside the house. *Id.* at PageID.1468. Instead, he drove away. A short time later, Rankin

---

[2] Carlyssa Borns is also referred to by the name Carlisha Harris in the state court record. *See e.g.,* ECF No. 23-7, PageID.1901, ECF No. 23-20, PageID.3044. The Michigan Court of Appeals referred to her as Carlyssa Borns and the Court will do so as well. Additionally, Petitioner and multiple witnesses share the same surname. The Court will refer to any Borns witnesses by their first names for clarity.

came back to the Borns' home with his mother and two sisters in one vehicle and his aunt and two cousins in a second vehicle. *Id.* at PageID.1469, 1471.

Melissa Borns, Petitioner's sister, also testified about Rankin's first trip to her home on December 9, 2012. She claimed that at about 5:00 a.m. that morning Rankin threw a brick through the front window of her home. ECF No. 23-7, PageID.1900-01. She knew Rankin was responsible because she saw him walking back to his van. *Id.* Her brother Carl Barnes[3] ran out the front door and began shooting at Rankin. *Id.* Rankin got away. *Id.*

Melissa further testified that Rankin returned to the home a second time that morning with his mother and two sisters. *Id.* at PageID.1903. Her brother Carl ran out of the house holding a gun. *Id.* Moments later, Melissa heard gunshots. *Id.* at PageID.1902. Petitioner was in the house when she heard the gunshots. *Id.* Melissa did not see Petitioner with a gun that day. *Id.* at PageID.1903–04.

Following his sentencing, Petitioner filed an appeal in the Michigan Court of Appeals through counsel claiming that the admission of Rankin's preliminary examination testimony violated his right of

---

[3] Carl is referred to as both Carl Barnes and Carl Borns throughout the state court record. The Court uses the last name "Barnes" because that is the spelling used in his affidavit. *See* ECF No. 23-20, PageID.3080.

confrontation and that insufficient evidence supported his assault with intent to murder convictions. The Michigan Court of Appeals affirmed Petitioner's convictions. *Borns*, 2014 WL 7442251, at *1. The Michigan Supreme Court denied leave to appeal. *People v. Borns*, 866 N.W.2d 454 (Mich. 2015).

Petitioner then filed a *pro se* motion for relief from judgment in the trial court. *See* ECF No. 23-10. He raised claims concerning (1) defense counsel's failure to investigate, interview and present alibi witnesses; (2) defense counsel's failure to hire an expert on the unreliability of eyewitness identification testimony; (3) in-court identifications which Petitioner claims were tainted by unnecessarily suggestive pretrial identification procedures; (4) appellate counsel's failure to raise critical issues; and, (5) the trial court's obligation to consider evidence outside the existing court record. *See id.* at PageID.2015–16. The trial court denied the motion. ECF No. 23-12. The Michigan Court of Appeals denied leave to appeal. *People v. Borns*, No. 338697 (Mich. Ct. App. Aug. 31, 2017).

Petitioner filed an application for leave to appeal in the Michigan Supreme Court. While his application was pending, Petitioner filed a habeas corpus petition in this Court. ECF No. 1. The Court stayed the case pending conclusion of Petitioner's appeal. ECF No. 10. On May 29,

2018, the Michigan Supreme Court denied leave to appeal. *People v. Borns*, 911 N.W.2d 715 (Mich. 2018).

Petitioner filed a second motion for relief from judgment in the trial court arguing (1) that he is entitled to an evidentiary hearing; (2) that he is actually innocent; and (3) that, but for counsel's deficient representation, no reasonable juror would have convicted him. ECF No. 23-15, PageID.2763. The trial court denied the motion. *See* ECF No. 23-18. The Michigan Court of Appeals dismissed Petitioner's application for leave to appeal because he could not appeal the denial of a second motion for relief from judgment. *See People v. Borns*, No. 350898 (Mich. Ct. App. Jan 24, 2020).

Petitioner then filed an application for leave to appeal the court of appeals' order in the Michigan Supreme Court. The Michigan Supreme Court directed the Wayne County Prosecuting Attorney to answer the application. *People v. Borns*, No. 160998 (Mich. Sept. 8, 2020). After receiving the answer, the Michigan Supreme Court denied the application for leave to appeal "because the defendant has failed to meet the burden of establishing entitlement to relief under MCR 6.508(D)." *People v. Borns*, 957 N.W.2d 818 (Mich. 2021).

On March 31, 2022, this Court granted Petitioner's motion to amend his petition and reopen the case. ECF No. 20. Respondent moved

to dismiss the petition on the ground that it was not timely filed. ECF No. 22. The Court denied the motion and directed Respondent to submit an answer addressing the merits of Petitioner's claims. ECF No. 25.

The petition, as amended, raises these claims:

I.     The trial court abused its discretion denying appellant's request for a *Mosden* hearing based on the sworn affidavit by Carl Barnes confessing to the charge against appellant.

II.    Defendant was deprived of his Fifth and Fourteenth Amendment right to due process and his Sixth Amendment right to effective assistance of counsel where new evidence reveals that trial counsel failed to investigate and present at trial a known witness who confessed to the charged offense and would establish his actual innocence.

III.   Defendant is entitled to remand to the circuit court for resentencing under the provisions citing *People v. Lockridge*, where it was determined other than the facts of prior convictions, any facts that increases the penalty for a crime beyond the prescribed statutory penalty must be submitted to a jury and proved beyond a reasonable doubt.

IV.    The admission of complainant Rankin's preliminary examination testimony was error, because it failed to meet the requirements of MCR 804(b)(1), and violated the Confrontation Clause.

V.     There was insufficient evidence to support his conviction of assault with intent to murder complainant Rankin.

8

VI.   The defendant-appellant claims he was denied his right to effective assistance of counsel where trial counsel: (A) failed to investigate, interview and present alibi witnesses; (B) failed to file necessary alibi notice; and (C) lost the advantage of having the prosecutor disprove an alibi defense.

VII.   Defendant-appellant claims he was denied his right to effective assistance of counsel where trial counsel failed to file a motion for funds to hire a defense expert on identification and present expert testimony on the unreliability of eyewitness identification testimony where the only evidence linking defendant to the crime was eyewitness identification.

VIII.   Defendant claims he was denied his right to a fair trial: (A) due to unnecessarily suggestive photo show-up; and (B) misconduct in connection with the show-ups; (C) alternatively, trial counsel rendered ineffective assistance of counsel when he failed to file a motion seeking suppression of any in-court identification deriving from the unnecessar[il]y suggestive photo show-ups.

IX.   Defendant-appellant was denied the effective assistance of appellate counsel when he failed to raise critical issues which have been outcome determinative on appeal; minimally, a hearing must be ordered on this point.

X.   The trial court abused its discretion by ignoring off-record evidence in ruling on the motion for relief from judgment.

*See* ECF No. 15, PageID.974-76. Respondent has filed an answer arguing

that Borns' third claim is untimely, his second, third, sixth, seventh, and

9

eighth claims are procedurally defaulted, and that all his claims are meritless. *See* ECF No. 26. Borns has filed a reply brief, ECF No. 27, and a motion to expand the record, ECF No. 29.

## II. Legal Standard

Habeas petitions filed under § 2254 are governed by the heightened standard of review set forth in the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"). 28 U.S.C. § 2254. To obtain relief, habeas petitioners who challenge "a matter 'adjudicated on the merits in State court' [must] show that the relevant state court 'decision' (1) 'was contrary to, or involved an unreasonable application of, clearly established Federal law,' or (2) 'was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.'" *Wilson v. Sellers*, 548 U.S. 122, 124–25 (2018) (quoting 28 U.S.C. § 2254(d)). The focus of this standard "is not whether a federal court believes the state court's determination was incorrect but whether that determination was unreasonable—a substantially higher threshold." *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007). "AEDPA thus imposes a highly deferential standard for evaluating state-court rulings and demands that state-court decisions be given the benefit of the doubt." *Renico v. Lett*, 559 U.S. 766, 773 (2010) (internal citations and quotation marks omitted).

"A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011) (quoting *Yarborough v. Alvarado*, 541 U.S. 652, 664 (2004)). Also, a state-court's factual determinations are presumed correct on federal habeas review, 28 U.S.C. § 2254(e)(1), and review is "limited to the record that was before the state court." *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011).

## III. Discussion

### A. Defense Counsel's Failure to Investigate and Call Witnesses (Claim VI)

The Court begins with Petitioner's strongest claim: that counsel was ineffective in failing to investigate or call witnesses. Petitioner's defense at trial was that Carl Barnes, not Petitioner, was the shooter. Defense counsel presented a single witness to support this defense. Petitioner identifies four additional witnesses who would have testified in corroboration that Barnes was the shooter. Petitioner argues that, despite knowing about these exculpatory witnesses, defense counsel did not contact them, investigate their potential testimony, or call them to testify. As explained below, the Court holds that counsel was deficient for failing to investigate and call these witnesses and that there is a reasonable probability that, but for counsel's error, the result of the trial

11

would have been different. Given the egregiousness of this lapse, and the obvious prejudice the absence of this testimony caused, the Court must conclude that the state court's holding to the contrary is an unreasonable application of clearly established Supreme Court precedent.

Respondent argues that this claim is procedurally defaulted. The doctrine of procedural default applies when (1) a petitioner fails to comply with a state procedural rule, (2) the rule is actually relied upon by the state courts, and (3) the procedural rule is "adequate and independent." *White v. Mitchell*, 431 F.3d 517, 524 (6th Cir. 2006). To determine whether a court relied on a state-law procedural default, the Court may look through unexplained orders to the "last reasoned opinion." *Ylst v. Nunnemaker*, 501 U.S. 797, 802 (1991). The last state court to issue a reasoned opinion addressing this claim, the Michigan trial court, denied relief under Mich. Ct. R. 6.508(D)(3). *See* ECF No. 23-12. Enforcement of Rule 6.508(D)(3) is an independent and adequate state ground sufficient to invoke the procedural default bar. *Amos v. Renico*, 683 F.3d 720, 733 (6th Cir. 2012). The Court, therefore, may consider the merits of this claim only if Petitioner establishes either (1) cause for the default and prejudice from the alleged constitutional violation, or (2) that failure to consider the claims would result in a "fundamental miscarriage of justice." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Petitioner asserts that his appellate counsel's ineffectiveness establishes cause to excuse the default. "To evaluate a claim of ineffective assistance of appellate counsel … the court must assess the strength of the claim that counsel failed to raise." *Henness v. Bagley*, 644 F.3d 308, 317 (6th Cir. 2011). The Court, therefore, begins with a thorough review of trial counsel's performance and then proceeds to consider whether appellate counsel was ineffective in failing to raise the claim.

### 1. *Strickland v. Washington*

An ineffective assistance of counsel claim has two components. *Strickland v. Washington*, 466 U.S. 668 (1984). A petitioner must show that counsel's performance was deficient, and that the deficiency prejudiced the defense. *Id.* at 687. To establish deficient representation, a petitioner must demonstrate that counsel's representation "fell below an objective standard of reasonableness." *Id.* at 688. To establish prejudice, a petitioner must show that, but for the constitutionally deficient representation, there is a "reasonable probability" that the outcome of the proceeding would have been different. *Id.* at 694.

The Sixth Amendment guarantees a defendant the right to effective assistance of counsel on the first appeal by right. *See Evitts v. Lucey*, 469 U.S. 387, 396–97 (1985). Appellate "'[c]ounsel's performance is strongly presumed to be effective.'" *McFarland v. Yukins*, 356 F.3d 688, 710 (6th

Cir. 2004) (quoting *Scott v. Mitchell*, 209 F.3d 854, 880 (6th Cir. 2000)). A petitioner does not have a constitutional right to have appellate counsel raise every non-frivolous issue on appeal. *Jones v. Barnes*, 463 U.S. 745, 754 (1983). "[A]ppellate counsel who files a merits brief need not (and should not) raise every nonfrivolous claim, but rather may select from among them in order to maximize the likelihood of success on appeal." *Smith v. Robbins*, 528 U.S. 259, 288 (2000). "If a reasonable probability exists that the defendant would have prevailed had the claim been raised on appeal, the court still must consider whether the claim's merit was so compelling that the failure to raise it amounted to ineffective assistance of appellate counsel." *Henness v. Bagley*, 644 F.3d 307, 317 (6th Cir. 2011).

### 2. The Uncalled Witnesses

Petitioner maintains that defense counsel failed to investigate and call four witnesses who would have testified that he was not the shooter. In support of this claim, he submits the affidavits of Othello Nails, Patricia Borns, Lashanti Bovan, and Gregg Marshall.[4] The affidavits provide the following relevant statements:

---

[4] Petitioner submits handwritten affidavits executed on January 7, 2014, by Nails, Marshall, and Patricia Borns. ECF No. 1, PageID.83, 87–88, 96–99. He also submits typed affidavits signed by each of these three witnesses in September 2016. *Id.* at PageID.81–82, 85–86, 93–95. It appears that the witnesses executed typed affidavits to provide more

14

<u>Othello Nails</u>

Othello Nails states that he was at the Borns' house on December 9, 2012, to attend a birthday party for twin sisters Patricia and Melissa Borns. ECF No. 1, PageID.81. Early in the morning, he was awakened by a loud noise and gunshots. *Id.* When the shooting stopped, Carl Barnes told Nails that James Rankin threw a brick through the window and that he (Carl) had run outside and shot at Rankin before Rankin ran away. *Id.* Petitioner came to the house later that morning. *Id.* Petitioner, Gregg Marshall, and Nails left the home to get supplies to repair the window. *Id.* Nails described what happened when they returned from the store:

> When we got back to the house and was about to go inside, I notice[d] four car[] loads of people, both women and men, drive past the house real slow and one of them yelled out the car window: "Where is Carlisha?" I went inside the house and let everyone know that three cars full of people were outside asking for Carlisha. Earl (i.e. Robert Borns) said he was going down there to tell them Carlisha did not live here. He jumped up and went outside walking down the street the same way the four cars full of people went. Everyone in the house went outside on the front po[r]ch but I continued walking out to the front yard, so that, I would be able to see down the street where Earl went. I notice Earl walking down the street toward the parked cars, when all of a sudden James and some women started jumping out of the cars yelling at him. I then

_____

formal statements. Each witness's typed affidavit is substantively consistent with, if not identical to, his or her handwritten statement. Petitioner submits a single typed affidavit by Lashanti Bovan executed on September 16, 2016. *Id.* at PageID.90–91.

saw James pull out a gun and sho[o]t it, and ... Carl shot back
at him. I did not see [Petitioner] with a gun or shooting a gun
at James on December 9, 2012.

*Id.* at PageID.81–82.

Nails stated he was willing to testify but trial counsel never
contacted him. *Id.*

### Gregg Marshall

In his affidavit, Gregg Marshall, a friend of Melissa and Patricia
Borns, stated that, on the day of the shooting, when he saw Rankin
approaching the house, someone yelled "they got a gun." ECF No. 1,
PageID.85. He, Petitioner, Melissa, and Patricia Borns, fled into the
house. *Id.* He did not see Petitioner in possession of a gun or shooting at
anyone. *Id.* He was never contacted by defense or appellate counsel. *Id.*
at PageID.86.

### Patricia Borns

Patricia Borns, Petitioner and Carl Barnes' sister, stated that, at
approximately 5:30 a.m. on December 9, 2012, she was sleeping on the
living room sofa when she was awakened by a brick crashing through her
dining room window. ECF NO. 1, PageID.93. She and her brother Carl
Barnes ran to the front door. *Id.* She saw James Rankin walking toward
his van. *Id.* Carl began shooting as Rankin was driving away. *Id.*

At approximately 9:00 a.m., Carl yelled "They back!" "Take Cover!"
*Id.* Patricia, Carl, Melissa, Robert Earl Borns, Othello Nails, and Gregg

16

Marshall ran onto the front porch. *Id.* Patricia saw James Rankin driving down the street with his mother and two sisters in the car with him and two cars following behind. *Id.*at PageID.94. People were getting out of the cars announcing that they were looking for Carlisha Harris. *Id.* Robert Earl Borns told them that Carlisha did not live there. *Id.* Rankin walked toward the home and placed a hand under his hoodie. *Id.* Someone yelled, "He got a gun." *Id.* Patricia ran back into the house just as her brother Carl Barnes was running out of the house with a gun in his hand. *Id.* She got on the floor and heard gunshots. *Id.* She saw Petitioner attempting to get outside but Melissa would not allow him to exit the house. *Id.* Patricia did not see Petitioner with a weapon on that date. *Id.* Patricia was never contacted by defense counsel. *Id.*

<u>Lashanti Bovan</u>

Lashanti Bovan, the niece of Petitioner and Carl Barnes, stated that James Rankin broke the front window of her Aunt Melissa Borns' home at approximately 6:00 a.m. on December 9, 2012. ECF No. 1, PageID.90. Carl Barnes ran out of the home and began shooting at Rankin. *Id.* Rankin and his family returned to the street later that morning. *Id.* Bovan's uncle, Robert Earl Borns, walked down the street to where Rankin and his family had parked. *Id.* When Rankin pulled out a gun, Carl Barnes began to shoot toward Rankin. *Id.* Bovan's uncles,

17

Petitioner and Robert Earl, retreated to the safety of the house while Carl continued to shoot at Rankin. *Id.* Petitioner did not shoot Rankin. *Id.* at PageID.91.  Petitioner told Bovan that she would be contacted by defense counsel, but she was not. *Id.*

### 3. State Court Decision

The last reasoned decision addressing the merits of this claim was the state trial court which found no error in counsel's failure to call these witnesses.[5] The trial court reasoned:

> Defendant admits counsel did call Melissa Borns, who[ ] testified at trial that defendant wasn't the shooter, so, the four non-testifying witnesses' testimony would have been redundant. Moreover, while it's true if an alibi is accepted by the jury, a defendant cannot be convicted. This does not mean, however, that the burden of proving the defense is upon the defendant; to the contrary, it is the duty of the prosecution to show beyond a reasonable doubt that the defendant did commit the crime and that, therefore, the defendant was at the scene of the crime at the time it was committed. *Sullivan v. People*, 31 Mich. 1 (1875); *People v. Owens,* 3 Mich. App. 707, 712, 143 N.W.2d 574, 576–77 (1966). Trial counsel may exclude relevant witnesses in order to avoid needless delay, or

---

[5] Although the trial court procedurally defaulted this claim under Michigan Court Rule 6.508(D)(3), the court also denied this claim on the merits. Thus, AEDPA's deferential standard of review applies to the trial court's opinion.  *See Moritz v. Lafler*, 525 F. App'x 277, 284 (6th Cir. 2013) ("[A]s long as the state court put forward a merits-based ground for denying post-conviction relief, its mentioning of procedural default as an alternative or even primary ground for denying relief does not preclude AEDPA deference.").

testimony, which may mislead the jury. MRE 403.[2] It appears the jury simply believed the testimony of the Complainants over that of the defendant. Therefore, after reviewing defendants' brief, this Court determines defendant is unable to demonstrate ineffective assistance of counsel.

––––––––––––––––

[2] Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the members [of the jury], or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence. MRE 403.

ECF No. 23-12, PageID.2078.

### 4. Performance Prong

An attorney's performance is deficient if "counsel's representation fell below an objective standard of reasonableness." *Strickland*, 466 U.S. at 688. Here, the state court's decision that counsel's performance was not deficient is an unreasonable application of *Strickland*.

The trial court held that counsel's exclusion of these witnesses was a reasonable decision to "exclude relevant witnesses in order to avoid needless delay, or testimony, which may mislead the jury." ECF No. 23-12, PageID.2078. In so holding, the trial court ignored defense counsel's obligation to *investigate* these witnesses *before* deciding to exclude them. There is no indication that counsel did so. Each of the affidavits submitted by the witnesses clearly states that they had no contact with defense counsel.

19

"[A] lawyer's *Strickland* duty 'includes the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence.'" *Ramonez v. Berghuis*, 490 F.3d 482, 487 (6th Cir. 2007) (quoting *Towns v. Smith,* 395 F.3d 251, 258 (6th Cir. 2005)).[6] "[T]he investigation leading to the choice of a so-called trial strategy must itself have been reasonably conducted lest the 'strategic' choice erected upon it rest on a rotten foundation." *Id.* at 488.

A thorough investigation of the witnesses' potential testimony would have revealed that the additional evidence they offered was not redundant or a waste of time. A review of their written statements shows that their statements addressed a critical and disputed issue. "The mere fact that one other witness … has testified to a particular fact … does not render other testimony on that point 'cumulative.'" *Vasquez v. Jones*, 496 F.3d 564, 576 (6th Cir. 2007). *See also English v. Romanowski*, 602 F.3d 714, 726-27 (6th Cir. 2010) ("Undoubtedly, the testimony of a second person to corroborate the Defendant's version of the events would not

---

[6] While circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court," 28 U.S.C. § 2254(d)(1), Sixth Circuit precedents are instructive in determining whether a state court decision reasonably applied existing Supreme Court case law. *Stermer v. Warren*, 959 F.3d 704, 727 nn.3, 4 (6th Cir. 2020) (holding that a circuit court decision evaluating a habeas corpus petition under AEDPA may be cited where the decision provides a "helpful discussion of Supreme Court precedent") (citing *Wiggins v. Smith*, 539 U.S. 510, 522 (2003).

20

have been cumulative, but rather could have critically added to the strength of the defense's case.").

The prosecution's case itself demonstrates the value of multiple witnesses. In its case in chief, the prosecution called four identification witnesses, a strategy that speaks for itself—four witnesses testifying to the same observation are more persuasive than one. While one witness may be mistaken, four are less likely to be so. A prosecutor or defense counsel may reasonably decline to present multiple witnesses on a minor or tangential issue, but the uncalled witnesses in this case could have testified to the single most crucial issue in this case—the identity of the shooter.

There is no reasonable justification for defense counsel's failure to investigate or present four witnesses who would have directly supported the defense that Carl Barnes—not Petitioner—was the shooter. No fairminded jurist could find that counsel satisfied his duty "to conduct a prompt investigation" and "to explore all avenues leading to facts relevant to the merits of the case." *Rompilla v. Beard*, 545 U.S. 374, 387 (2005). The state court's holding to the contrary unreasonably applied *Strickland*'s performance prong.

### 5. Prejudice Prong

Petitioner has shown that counsel's performance was deficient and that the state court's contrary conclusion was unreasonable. To satisfy *Strickland's* second prong, he must show "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694.

The Court begins with the trial court's holding that Petitioner was not prejudiced because the jury "simply believed the testimony of the Complainants over that of the defendant."[7] ECF No. 23-12, PageID.2078. Unfortunately, this statement betrays a fundamental misunderstanding of the prejudice analysis. The question is not whether the jury in fact believed the prosecution's witnesses instead of those offered by the defense; rather, *Strickland* requires an inquiry into whether there is a reasonable probability that the jury *would have* had a reasonable doubt if the defense had offered evidence that counsel failed to investigate or present. Petitioner has met this standard.

Petitioner's trial was a credibility contest between the prosecution's eyewitnesses and the defense's single witness. No other evidence

---

[7] Petitioner did not testify. So the Court assumes the trial court's reference to defendant's testimony is a reference to the defense as a whole.

established Petitioner's identity as the shooter. The testimony of four additional defense witnesses uniformly identifying someone else as the shooter would have substantially strengthened the defense. *See Hewitt-El v. Burgess*, 53 F.4th 969, 982 (6th Cir. 2022) (finding a strong likelihood of a different result if defense counsel had called two additional witnesses to corroborate defendant's testimony because that "would have pitted three [defense] witnesses against one [prosecution witness] in a pure credibility contest").

While courts may regard exculpatory affidavits offered after conviction with skepticism, the affidavits submitted by Petitioner bear certain earmarks of reliability. *Allen v. Yukins*, 366 F.3d 396, 405 (6th Cir. 2004). First, these are not recanting affidavits by trial witnesses which courts commonly regard with "great suspicion." *Brooks v. Tennessee*, 626 F.3d 878, 897 (6th Cir. 2010). There is no record evidence that the affiants ever wavered from their statements or testified inconsistently.

Second, three of the four affidavits were executed within five months of Petitioner's sentencing and almost one year before the Michigan Court of Appeals affirmed Petitioner's convictions on direct appeal. Thus, they fall outside the "cloud of skepticism" cast over affidavits executed long after a conviction is final. *Hubbard v. Rewerts*,

23

98 F.4th 736, 750 (6th Cir. 2024), *cert. denied*, No. 24-6810, 2025 WL
581742 (Feb. 24, 2025). *See also Herrera v. Collins*, 506 U.S. 390, 423
(1993) (O'Connor, J., concurring) (holding that "11th hour" affidavits
produced with "no reasonable explanation" for delay should be "treated
with a fair degree of skepticism"); *Taylor v. Illinois*, 484 U.S. 400, 414
(1988) ("[I]t is ... reasonable to presume that there is something suspect
about a defense witness who is not identified until after the 11th hour
has passed").

Third, Petitioner doggedly attempted to file the affidavits with the
Michigan Court of Appeals on direct review but encountered multiple
obstacles.[8]

---

[8] The following summary illustrates Petitioner's efforts:

After appointed appellate counsel filed an appeal brief, Petitioner sent a
letter to the Michigan Court of Appeals requesting an extension of time
to file a pro per supplemental brief (a "Standard 4 brief"). ECF No. 9-8,
PageID.674. Petitioner explained to the court:

> [M]y time is running out on my standard 4 brief …. I have no
> idea what to do next so I'm sending a motion for extension [of]
> time ... to you … I already mailed my attorney copies of the
> motion for extension of time. I'm at my last days and I'm
> hoping for a chance to put in my issue.

ECF No. 9-8, PageID.678. Petitioner also later filed a motion for
enlargement of time. *Id.* at PageID.679.

On March 7, 2014, the Michigan Court of Appeals returned the letter and
motion without filing because, when a party is represented by appointed

Fourth, the affidavits do not raise suspicions often associated with family members' exculpatory testimony. The Sixth Circuit has held that "it is within reason to assume that [a witness's] credibility would be diminished" before the jury if the witness had a close relationship with the defendant, *Ballinger v. Prelesnik*, 709 F.3d 558, 563 (6th Cir. 2013), because they "have a personal stake in exonerating" the defendant. *McCray v. Vasbinder*, 499 F.3d 568, 573 (6th Cir. 2007). Here, the witnesses are not simply exculpating a family member in order to point the finger at a third party, they are incriminating another family member. Indeed, Lashanti Bovan's affidavit explains the challenge: "It

---

counsel, appointed counsel must file a motion for extension of time. *Id.* at PageID.685.

Petitioner then retained counsel, Wright W. Blake, who, on March 18, 2014, filed a motion to extend the briefing schedule. *Id.* at PageID.688–89. The court of appeals returned the motion without filing because Blake was not the attorney of record. *Id.* at PageID.691. The court of appeals rejected Blake's second motion to extend the briefing schedule because the motion fee was unpaid and the motion was not filed in accordance with state court rules. *Id.* at PageID.714.

Petitioner then submitted a motion to remand for an evidentiary hearing regarding counsel's failure to contact and call four exculpatory witnesses. *Id.* at PageID.699–712. On April 11, 2014, the Michigan Court of Appeals returned the motion because only a party represented by *appointed* counsel may file a Standard 4 brief. *Id.* at PageID.715. The Michigan Court of Appeals' publicly available docket shows that retained counsel never filed a brief on Petitioner's behalf.

has been very difficult for me to have to come forward and testify against one of my uncles (i.e. Carl Lee Barnes) who shot James, while testifying for my other uncle (i.e. Clarence Borns), who did not sho[o]t James." ECF No.1, PageID.91.

To be sure, the testimony of Petitioner's potential alibi witnesses would not have been without inconsistencies or weaknesses. But Petitioner does not have to establish that the jury would have believed the witnesses. The jury may have been unpersuaded by the witnesses after hearing their testimony and judging their credibility, but "there certainly remained a *reasonable probability* that the jury would not have" discredited the potential witnesses and that is sufficient to show prejudice under *Strickland*. *Ramonez*, 490 F.3d at 491 (emphasis added).

The impact of defense counsel's error must be considered in the context of the totality of the evidence presented. *See, e.g., Strickland*, 466 U.S. at 696 ("[A] verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support."). The credibility of the identification witnesses was central to this case. There is a reasonable probability that the corroboration of Melissa Borns' testimony by four additional witnesses could have influenced the jury.

Counsel failed to investigate available witnesses whose testimony would have corroborated that of the lone defense witness in a case dependent entirely on credibility determinations.  Nothing in the record suggests that counsel made a reasonable tactical decision not to interview these witnesses. No physical evidence showed the Petitioner was the shooter, so the testimony of the prosecution's eyewitnesses was the most important evidence presented. If four additional witnesses had supported Melissa Borns' testimony that Clarence Barnes was the shooter, there is little to no question that such evidence would create a reasonable probability that the jury could find reasonable doubt as to Petitioner's guilt.  Petitioner has shown both deficient performance and prejudice under *Strickland*. Under the applicable standard, the Court finds that any truly fairminded jurist could not fail to agree with this conclusion. Consequently, the Michigan Court of Appeals' decision to the contrary was an unreasonable application of Supreme Court precedent.

### 6. Appellate Counsel's Performance

The Court returns to the question whether appellate counsel was deficient for failing to raise this claim. When ineffective assistance of counsel is asserted as cause to excuse a procedural default, the ineffective assistance claim is reviewed *de novo*. *Chase v. MaCauley*, 971 F.3d 582, 591–92 (6th Cir. 2020).

27

Relevant to an assessment of appellate counsel's performance is the strength of the claims counsel actually raised on appeal. First, appellate counsel argued that the trial court violated Petitioner's Sixth Amendment right of confrontation by admitting the preliminary examination testimony of James Rankin who died prior to trial. Counsel argued that Petitioner lacked the opportunity and similar motive to develop Rankin's testimony during the preliminary examination. *See* ECF No. 9-8, PageID.662–67. While the Sixth Circuit has stated that there is "room for reasonable debate" on this issue, *Al-Timimi v. Jackson*, 379 F. App'x 435, 437 (6th Cir. 2010), Michigan appellate courts have consistently held that a preliminary examination provides sufficient opportunity for examination to satisfy the Confrontation Clause. *See e.g. People v. Burney*, No. 313252, 2014 WL 1233947, *3 (Mich. Ct. App. Mar. 25, 2014); *People v. Nelson*, No. 301253, 2014 WL 783464, *3 (Mich. Ct. App. Feb. 25, 2014); *People v. McCall*, No. 306336, 2012 WL 4373282, *3–4 (Mich. Ct. App. Sept. 25, 2012). Appellate counsel presented no argument to distinguish Petitioner's case from the long line of state court cases denying relief on this claim.

Second, appellate counsel argued that the prosecution failed to present sufficient evidence to prove the intent element of assault with intent to murder beyond a reasonable doubt. Counsel argued:

>There is no direct evidence Appellant shot Rankin with an actual intent to kill. Appellant was therefore "made to suffer the onus of a criminal conviction" without sufficient proof. *See Jackson*, 443 U.S. at 316–18. The prosecution's evidence, even when viewed in a light most favorable to the prosecution, failed to establish Appellant's guilt. No rational trier of fact could have found guilt beyond a reasonable doubt. The evidence was insufficient as a matter of law to support a finding of intent to murder. He was unjustly convicted of a crime which he did not commit. Accordingly, Appellant's assault with intent to murder conviction must be reversed or, minimally, reduced to assault with intent to do great bodily harm less than murder.

ECF No. 9-8, PageID.671.

The flaw in this argument is that Michigan law does not require "direct evidence" of the "actual intent to kill." In fact, Michigan caselaw expressly provides that "the actual-intent-to-kill element does not need to be proved by 'direct, positive, or independent evidence.'" *Hudson v. Lafler*, 421 F. App'x 619, 626 (6th Cir. 2011) (quoting *People v. Taylor*, 375 N.W.2d 1, 7 (1985)). Moreover, under Michigan law, the intent element may be inferred from "all the facts in evidence, including use of a deadly weapon, taking aim at a victim, [and] injury to the victim." *People v. Everett*, 899 N.W.2d 94, 107 n.10 (quotation omitted).

Here, it was undisputed at trial that someone fired a gun at Rankin. The disputed question was the identity of the shooter, which makes this claim significantly weaker than Petitioner's ineffective assistance of counsel claim. Appellate counsel was constitutionally deficient for failing

to raise the ineffective assistance claim, establishing cause to excuse the default.

The Court now turns to the question of prejudice, whether there existed a "reasonable probability" that the outcome of Petitioner's direct appeal would have been different. *Chase*, 971 F.3d at 595. If there is a reasonable probability that the court of appeals would have found that defense counsel's failure to investigate and call these witnesses "undermined confidence in the verdict," then Petitioner was prejudiced by counsel's failure to raise the issue. *Hewitt-El v. Burgess*, 53 F.4th 969, 979 (6th Cir. 2022). The prosecution's case rested on the credibility of four eyewitnesses. Given the centrality of the credibility balancing function of the jury in a case based entirely on witness testimony, counsel's failure to investigate and call four witnesses who would have contradicted the prosecution's witnesses undermined confidence in the verdict. That excuses the default of this claim.

For these reasons, the Court will **GRANT** Petitioner a conditional writ of habeas corpus because the state court's decision denying his ineffective assistance of trial claim was an unreasonable application of clearly established Supreme Court precedent.

## B. Defense Counsel's Failure to Present Expert Witness (Claim VII)

Next, Petitioner argues that defense counsel was ineffective for failing to call an expert to explain the unreliability of eyewitness identification. Respondent maintains that this claim is procedurally defaulted. The Court is not required to address a procedural default issue before deciding against the petitioner on the merits. *Overton v. Macauley*, 822 F. App'x 341, 346 (6th Cir. 2020) ("Although procedural default often appears as a preliminary question, we may decide the merits first."). Here, rather than conduct a lengthy inquiry into procedural default, judicial economy favors proceeding directly to a discussion on the merits of this claim.

The Supreme Court has recognized that eyewitness identification carries certain dangers such as unreliable memory or perception. *United States v. Wade*, 388 U.S. 218, 235 (1967). The Sixth Circuit has acknowledged that expert testimony on eyewitness identification is "'universally recognized as scientifically valid and of aid to the trier of fact." *Jackson v. Bradshaw*, 681 F.3d 753, 762 (6th Cir. 2012) (quoting *Ferensic v. Birkett*, 501 F.3d 469, 482 (6th Cir. 2007)). Yet "[t]he selection of an expert witness is a paradigmatic example of the type of 'strategic choic[e]' that, when made 'after thorough investigation of [the] law and

31

facts,' is 'virtually unchallengeable.'" *Hinton v. Alabama*, 571 U.S. 263, 275 (2014) (quoting *Strickland*, 466 U.S. at 690).

In *Jackson*, the Sixth Circuit held that a trial attorney's decision not to present expert testimony on eyewitness identification was not unreasonable where potential weaknesses in the eyewitnesses' identification were demonstrated through cross-examination and closing arguments. *Jackson*, 681 F.3d at 762–63. "[N]o precedent establishes that defense counsel must call an expert witness about the problems with eyewitness testimony in identification cases or risk falling below the minimum requirements of the Sixth Amendment." *Perkins v. McKee*, 411 F. App'x 822, 833 (6th Cir. 2011).

In this case, defense counsel challenged eyewitness testimony through cross-examination. A habeas petitioner's claim that trial counsel was ineffective for failing to call an expert witness cannot be based on speculation. *See Clark v. Waller*, 490 F.3d 551, 557 (6th Cir. 2007). Petitioner presents no evidence that he has an expert witness who would be willing to testify regarding eyewitness identification or what the nature of that expert testimony would be in this case. In the absence of such proof, Petitioner is unable to establish that he was prejudiced by counsel's failure to call such an expert witness to testify at trial. *Id.* (rejecting petitioner's ineffective-assistance claim arising from counsel's

32

failure to call a particular witness because the petitioner "offered no evidence, beyond his assertions, to prove what the content of [the witness's] testimony would have been").

### C. Carl Barnes' Affidavit (Claim II)

Petitioner's next claim concerns the affidavit of his brother Carl Barnes admitting that he, not Petitioner, was the gunman. Petitioner presented the affidavit for the first time in his second motion for relief from judgment. He claimed that Barnes' affidavit established his innocence and that defense counsel was ineffective for failing to investigate and present Carl Barnes testimony at trial.

Respondent argues that this claim is procedurally defaulted because the trial court held that Petitioner did not meet the requirements for filing a successive motion for relief from judgment under Michigan Court Rule 6.502(G). Under Rule 6.502(G)(1), a criminal defendant in Michigan is generally permitted to file only one motion for relief from judgment. *See Banks v. Jackson*, 149 F. App'x 414, 418 (6th Cir. 2005). But Michigan Court Rule 6.502(G)(2), allows a defendant to file a second or subsequent motion based on a retroactive change in law that occurred after the first motion for relief from judgment or a claim of new evidence that was not discovered before the first such motion. *Banks*, 149 F. App'x at 418. Enforcement of Rule 6.502(G) is an independent and adequate

33

state ground sufficient to invoke the procedural default bar. *Ingram v. Prelesnik*, 730 F. App'x 304, 311 (6th Cir. 2018).

Here, the trial court expressly invoked Rule 6.502(G) when holding that Carl Barnes' affidavit was "newly available" not "newly discovered" evidence. *See* ECF No. 23-18, PageID.2857-59. But the trial court expressly relied on a different court rule to deny Petitioner's related ineffective assistance of counsel claim. The trial court declined to consider this claim under Michigan Court Rule 6.508(D)(2),[9] stating that the "issue of the effectiveness of his trial or appellate counsel was already decided against the Defendant in a prior proceeding." *See* ECF No. 23-18, PageID.2866. The Sixth Circuit has held that "[w]hen a state court declines to review the merits of a petitioner's claim on the ground that it has done so already, it creates no bar to federal habeas review." *Peoples v. Lafler*, 734 F.3d 503, 512 (6th Cir. 2013). *See also Valentin v. Tanner*, No. 23-1207, 2023 WL 5748143 at *4 (6th Cir. Sept. 1, 2023) (Rule 6.508(D)(2) "is a rule of collateral estoppel that will not procedurally default a federal habeas claim").

---

[9] Rule 6.508(D)(2) provides that a court may not grant a motion for relief from judgment if the motion "alleges grounds for relief which were decided against the defendant in a prior appeal or proceeding under this subchapter, unless the defendant establishes that a retroactive change in the law has undermined the prior decision ..."  Mich. Ct. Rule 6.508(D)(2).

34

This claim was not decided against Petitioner in a previous appeal. While he raised ineffective assistance of counsel claims in previous appeals, he did not raise this particular basis for counsel's ineffectiveness. Therefore, no Michigan court has decided this claim on the merits and the Court applies a *de novo* standard of review.

To support his claim, Petitioner presents Carl Barnes' affidavit dated April 22, 2017. ECF No. 15, PageID.1012–14. Barnes admits to shooting James Rankin on December 9, 2012. *Id.* at PageID.1013. Barnes states he informed defense counsel on July 16, 2012 that he was willing to talk to the police and prosecutor and to testify on his brother's behalf. *Id.* Defense counsel told Barnes that counsel would inform the prosecutor about Barnes' involvement and the police and prosecutor would contact Barnes. *Id.* Barnes was never contacted by law enforcement. *Id.*

On state-court collateral review, the Wayne County Prosecutor filed two affidavits which undermine Petitioner's claim. First, defense counsel James B. Schlaff stated, in relevant part:

> Carl [Barnes] never spoke to me before trial, or at any time, about being willing to testify that he was the shooter in this case. That would be something that I would remember. Not only that, but there is no reason that I would not have called him to testify if he had claimed to be the real shooter.

ECF No. 23-20, PageID.3116.

35

The second affidavit is that of Carole Stanyar, an Assistant Wayne County Prosecutor assigned to the Conviction Integrity Unit ("CIU"). ECF 23-20, PageID.3114–15. She stated that Petitioner applied to the CIU for review of his case because he is innocent. He claimed his brother was the gunman and submitted his brother's affidavit admitting to the shooting. *Id.* As part of her investigation, Stanyar spoke to Barnes and asked whether he had signed an affidavit admitting that he shot James Rankin. Barnes "never gave an explicit answer to that question, instead asking, 'Which shooting are you talking about?'" *Id.* Barnes "then offered an alternate explanation for the shooting that did not involve him or his brother, Clarence—'That was a drive-by.'" *Id.* at PageID.3115. The CIU investigation was closed because Barnes "implicitly disavowed" his affidavit. *Id.*

Petitioner has not established that Barnes told counsel he was the shooter, nor has he established that counsel should have known that Barnes was willing to testify on Petitioner's behalf. Barnes' affidavit was executed over four years after the shooting. Delayed affidavits which seek to exonerate a habeas petitioner are "treated with a fair degree of skepticism." *Herrera v. Collins*, 506 U.S. 390, 423 (1993). Indeed, claims "based solely upon affidavits are disfavored because the affiants' statements are obtained without the benefit of cross-examination and an

opportunity to make credibility determinations." *Id.* at 417. Petitioner blames the long delay in obtaining an affidavit on counsel's failure to investigate. But Petitioner does not explain why his brother did not approach the prosecutor or police himself if he was willing to confess. Nor does he suggest how counsel should have known that Barnes would be willing to testify. Because Petitioner fails to show that counsel could have and should have presented testimony from Barnes at the time of trial, he fails to overcome the strong presumption that counsel rendered effective assistance.

Finally, to the extent that Petitioner raises a stand-alone claim that Barnes' affidavit establishes his actual innocence, he is not entitled to relief.[10] Claims of actual innocence based on newly discovered evidence "have never been held to state a ground for federal habeas relief absent an independent constitutional violation occurring in the underlying state criminal proceeding." *Herrera*, 506 U.S. at 400. "[F]ederal habeas courts sit to ensure that individuals are not imprisoned in violation of the Constitution—not to correct errors of fact." *Id.* In *House v. Bell*, 547 U.S. 518 (2006), the Supreme Court declined to answer the question left open

---

[10] The Court need not first address whether this stand-alone actual innocence claim is procedurally defaulted because the claim fails on the merits. *See Hudson v. Jones*, 351 F.3d 212, 215 (6th Cir. 2003) ("[F]ederal courts are not required to address a procedural-default issue before deciding against the petitioner on the merits.").

37

in *Herrera*—whether a habeas petitioner may bring a freestanding claim of actual innocence. *See id.* at 554 (noting that "in a capital case a truly persuasive demonstration of 'actual innocence' made after trial would render the execution of a defendant unconstitutional, and warrant federal habeas relief if there were no state avenue open to process such a claim") (quoting *Herrera*, 506 U.S. at 417).

Citing *Herrera* and *House*, the Sixth Circuit has ruled that a free-standing claim of actual innocence based upon newly-discovered evidence is not cognizable on federal habeas review. *See Cress v. Palmer*, 484 F.3d 844, 854 (6th Cir. 2007) ("[W]e have repeatedly indicated that such claims [of actual innocence] are not cognizable on habeas."); *Bowman v. Haas*, No. 15-1485, 2016 WL 612019, at *5 (6th Cir. Feb. 10, 2016) (holding that a freestanding claim of actual innocence is not cognizable in a non-capital federal habeas proceeding).

Moreover, even if this claim were cognizable on federal habeas review, Barnes' affidavit falls short of establishing Petitioner's actual innocence. "Actual innocence" means factual innocence, not mere legal insufficiency. *Bousley v. United States*, 523 U.S. 614, 623 (1998). A petitioner must "must demonstrate that he *factually* did not commit the crime" and that "requires him to do more than only undermine the state's case." *Hubbard*, 98 F.4th at 748 (6th Cir. 2024) (emphasis in *Hubbard*).

38

As discussed earlier, Barnes's more recent statements call into question the contents of his affidavit. While Barnes's affidavit may undermine the state's case, it is not sufficient to establish Petitioner's actual innocence.

### D. State Court Post-Conviction Proceeding (Claim I)

Petitioner's first claim concerns the trial court's failure to hold an evidentiary hearing when Petitioner filed his second motion for relief from judgment. That motion presented Carl Barnes's affidavit confessing to the shooting. This claim is not cognizable on habeas corpus review.

The Sixth Circuit has held "'habeas corpus cannot be used to mount challenges to a state's scheme of post-conviction relief.'" *Leonard v. Warden, Ohio State Penitentiary*, 846 F.3d 832, 854 (6th Cir. 2017) (quoting *Greer v. Mitchell*, 264 F.3d 663, 681 (6th Cir. 2001)). *See Pennsylvania v. Finley*, 481 U.S. 551, 557 (1987) (holding that states have no constitutional obligation to provide post-conviction remedies); *Kirby v. Dutton*, 794 F.2d 245, 246 (6th Cir. 1986) (holding that habeas corpus is not the proper means by which prisoners should challenge errors or deficiencies in state post-conviction proceedings). A challenge to a state court's failure to hold an evidentiary hearing on a post-conviction motion is a challenge to state post-conviction proceedings, rather than to the underlying conviction itself. *Shalash v. Gray*, No. 20-3772, 2020 WL

8182803, at *4 (6th Cir. Dec. 20, 2020). As such, it is not a claim cognizable on habeas review.

**E. Sentencing Claim (Claim III)**

Petitioner argues that he was sentenced based on impermissible judicial fact-finding.[11]

Under the Sixth Amendment, any fact that increases the maximum penalty for a crime must be submitted to a jury and proved beyond a reasonable doubt. *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000). The same requirement applies to any fact that increases a mandatory minimum. *Alleyne v. United States*, 570 U.S. 99, 111–12 (2013). In *People v. Lockridge*, the Michigan Supreme Court held that, under *Alleyne*, the mandatory application of Michigan's sentencing guidelines was unconstitutional. 870 N.W.2d 502, 519 (Mich. 2015). To remedy this violation, the Michigan Supreme Court made the sentencing guidelines advisory. *Id.* at 520–21.

Petitioner was sentenced on August 9, 2013, after *Alleyne* was decided and before *Lockridge* made Michigan's sentencing guidelines advisory on July 29, 2015. Consequently, the Court must examine the

---

[11] Respondent argues that this claim is unexhausted, untimely, and procedurally defaulted. The Court is not required to address these issues before denying the claim on the merits. *Overton v. Macauley*, 822 F. App'x 341, 346 (6th Cir. 2020). Here, judicial economy favors proceeding directly to a discussion of the merits of this claim.

record to determine whether his sentence was based on judicially found facts neither admitted by him nor determined by a jury.

Michigan's sentencing scheme utilizes offense variables ("OVs") and prior record variables ("PRVs") to come to a guidelines range. In this case, Petitioner's PRV total was 102 points and his OV total was 75 points, giving him a guideline range of 171 to 425 months. ECF No. 9-7, PageID.633; ECF No. 23-20, PageID.3051. Petitioner claims that prior record variables 2 and 5, and offense variables 3 and 6 were scored based on judicially found facts.

Petitioner's total prior record variable score was calculated based on prior convictions. ECF No.9-7, PageID.629–30. The Supreme Court has made clear that a judge may find "the fact of a prior conviction" during sentencing without violating the Constitution. *Apprendi*, 530 U.S. at 490. Thus, the calculation of Petitioner's prior record variable score was not contrary to *Alleyne*.

The scoring of twenty-five points for OV 6 was justified by the jury's verdict. OV 6 is scored at twenty-five points if: "The offender had unpremeditated intent to kill, the intent to do great bodily harm, or created a very high risk of death or great bodily harm knowing that death or great bodily harm was the probable result." Mich. Comp. Laws § 777.36. By finding Petitioner guilty of assault with intent to do great

41

bodily harm, the jury necessarily found beyond a reasonable doubt the facts necessary for scoring twenty-five points for OV 6.

The trial court scored 10 points for OV 3, which provides for the scoring of 10 points when the victim suffered "bodily injury requiring medical treatment." Mich. Comp. Laws § 777.33(1). This scoring relied on judge-found facts, but Petitioner is not entitled to resentencing on this claim because any error was harmless. *Washington v. Recuenco*, 548 U.S. 212, 222 (2006) (failing to submit a sentencing factor to the jury is subject to a harmless error analysis). Changing the score for OV 3 from ten to zero does not change Petitioner's minimum sentence range of 171 to 425 months. *See* Mich. Comp. Laws § 777.62. Any error, therefore, was harmless. *See, e.g., United States v. Castro*, 823 F. App'x 375, 379 (6th Cir. 2020) (holding that any error in calculating guidelines range was harmless because correcting the error would not have lowered defendant's sentencing guidelines range).

## F. Admission of Preliminary Examination Testimony (Claim IV)

Petitioner argues that the admission of James Rankin's preliminary examination testimony violated his right of confrontation and Mich. R. Evid. 804(b)(1).

The United States Constitution's Sixth Amendment Confrontation Clause provides: "In all criminal prosecutions, the accused shall enjoy the

right … to be confronted with the witnesses against him." U.S. Const. amend. VI. "[T]he Sixth Amendment's right of an accused to confront the witnesses against him is … a fundamental right and is made obligatory on the States by the Fourteenth Amendment." *Pointer v. Texas*, 380 U.S. 400, 403 (1965). The right to a trial by jury is based on the belief "'that the 'evidence developed' against a defendant shall come from the witness stand in a public courtroom where there is full judicial protection of the defendant's right of confrontation, of cross-examination, and of counsel.'" *Id.* at 405 (quoting *Turner v. State of Louisiana*, 379 U.S. 466, 472–73 (1965)). The Confrontation Clause bars out-of-court statements that are testimonial in nature unless the witness is unavailable, and the defendant had a prior opportunity to cross-examine the witness. *Crawford v. Washington*, 541 U.S. 36, 68 (2004).

Petitioner concedes that Rankin's death rendered him unavailable to testify. The Michigan Court of Appeals held that the second prong of *Crawford*, a "prior opportunity for cross-examination" was satisfied by Rankin's testimony at the preliminary examination. *Borns*, 2014 WL 7442251 at *2. Petitioner points to no Supreme Court precedent holding that a defendant's full opportunity to cross-examine the victim at the preliminary examination is inadequate to satisfy the requirements of the Confrontation Clause. In the absence of such authority, he is not entitled

to habeas relief.  *See Williams v. Bauman*, 759 F.3d 630, 635–36 (6th Cir. 2014). Although "there is some question whether a preliminary hearing necessarily offers an adequate prior opportunity for cross-examination for Confrontation Clause purposes," *Al-Timimi*, 379 F. App'x. at 437, the Sixth Circuit has observed that because "there is room for reasonable debate on the issue," a state court's decision that a preliminary examination satisfies the "opportunity for [the] cross-examination" requirement, "is necessarily beyond [a federal court's] power to remedy under § 2254, even if it turns out to be wrong." *Williams v. Bauman*, 759 F.3d at 636 (citing *White v. Woodall*, 572 U.S. 415, 419 (2014)). Because there is no "clearly established federal law" to which the state court's decision could be "contrary" within the meaning of § 2254(d)(1), the Court denies habeas relief on this claim.

Finally, Petitioner's claim that admission of the preliminary examination testimony violated the Michigan Rules of Evidence is not cognizable on federal habeas review. *See Estelle v. McGuire*, 502 U.S. 62, 67–68 (1991) ("'[F]ederal habeas corpus relief does not lie for errors of state law.'") (citation omitted).

44

### G. Sufficiency of the Evidence (Claim V)

In his fifth claim, Petitioner argues that the prosecution presented insufficient evidence to establish the requisite intent for his conviction of assault with intent to murder Rankin.

"[T]he Due Process Clause protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364–65 (1970). On direct review, review of a sufficiency of the evidence challenge focuses on whether "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis in original).

On habeas review, the sufficiency of the evidence inquiry involves "two layers of deference": one to the jury verdict, and a second to the Michigan Court of Appeals' decision. *Tanner v. Yukins*, 867 F.3d 661, 672 (6th Cir. 2017). First, the Court "must determine whether, viewing the trial testimony and exhibits in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Brown v. Konteh*, 567 F.3d 191, 205 (6th Cir. 2009) (citing *Jackson v. Virginia,* 443 U.S. at 319)

(emphasis in *Jackson*). Second, if the Court were "to conclude that a rational trier of fact could not have found a petitioner guilty beyond a reasonable doubt, on habeas review, [the Court] must still defer to the state appellate court's sufficiency determination as long as it is not unreasonable." *Id.*

The Michigan Court of Appeals, applying the appropriate standard of review, denied Petitioner's claim:

> To establish assault with intent to murder, the prosecution must establish "(1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder." *People v. Brown*, 267 Mich. App 141, 147–148; 703 N.W.2d 230 (2005) (quotation marks and citations omitted). Assault with intent to commit murder is a specific intent crime. *Id.* at 147. Defendant does not assert any instructional error as to the elements of this offense or the definitions relevant to those elements.

> Defendant argues only that there was insufficient evidence for a jury to properly conclude that he possessed a specific intent to kill Rankin. Intent to kill may be inferred from the circumstances and minimal circumstantial evidence may be sufficient to prove the actor's state of mind. *People v. McRunels*, 237 Mich. App 168, 181; 603 N.W.2d 95 (1999). Evelyn and both of her daughters testified that defendant pulled out a gun, chased them, and shot at them, injuring Rankin. At the preliminary examination, Rankin offered a similar version of events, stating that defendant shot him twice in the leg. All four witnesses separately identified defendant as the shooter. Officer Richards also testified to Rankin's gunshot wounds and to the bullet holes in the car. The jury could reasonably infer defendant's intent to kill

46

based on his use of a gun, a weapon "naturally adapted to produce death," which he shot in the complainants' direction, striking Rankin twice. *People v. Taylor*, 422 Mich. 554, 568; 375 N.W.2d 1 (1985). Defendant was not required to announce his intent, *McRunels*, 237 Mich. App at 181, and the jury had proper grounds to infer intent, *People v. Carines*, 460 Mich. 750, 757; 597 N.W.2d 130 (1999). Accordingly, there was sufficient evidence for the jury to find that defendant possessed the necessary intent to kill Rankin and, therefore, defendant's assault with intent to murder conviction was supported by sufficient evidence.

*Borns*, 2014 WL 7442251, at *3.

As discussed above, the Court holds that there is a reasonable probability that the jury may have reached a different result if defense counsel had presented additional witnesses—all of whom contradicted the prosecution's witnesses and identified a different shooter. But in the context of this sufficiency of the evidence claim, the Court must only consider the evidence introduced at trial. *Herrera*, 506 U.S. at 402 (holding that "sufficiency of the evidence review ... is limited to record evidence"). Within those parameters, Petitioner has not shown that the Michigan Court of Appeals' decision denying relief on this claim was contrary to, or unreasonably applied, clearly established federal law.

47

### H. Pretrial Identification Procedure (Claim VIII)

Defendant claims he was denied his right to a fair trial due to: (A) an unnecessarily suggestive photo show-up; (B) misconduct in connection with the show-ups; and (C) ineffective assistance of trial counsel for failing to move to suppress any in-court identification deriving from the unnecessarily suggestive photo show-ups.

A pretrial identification violates due process where: (1) the identification procedure is impermissibly suggestive; and (2) the suggestive procedure gives rise to a very substantial likelihood of misidentification. *Neil v. Biggers*, 409 U.S. 188, 197–98 (1972); *Manson v. Brathwaite*, 432 U.S. 98, 114 (1977) (due process challenges to identification procedures are reviewed using *Biggers'* test). But the Supreme Court has held that suppression of the tainted identification is not necessarily the inevitable consequence and must be determined on a case-by-case basis. *Manson*, 432 U.S. at 116. Unless there is "a very substantial likelihood of irreparable misidentification," identification evidence "is for the jury to weigh." *Id.*

Petitioner argues that the pretrial identification procedure was impermissibly suggestive because he had "dissimilar facial features and hairstyle from the other subjects." ECF No. 1, PageID.54. The photographic array, which is part of the state court record filed in this

48

case, consisted of six pictures of men apparently of the same race and similarly shaped features. *See* ECF No. 23-10, PageID.2025. There are differences in appearance among the six photographs, but no single photograph stands out as singularly different than the others.

Petitioner also alleges "misconduct in connection with the show-ups," ECF No. 1, PageID.52, but does not identify the specific nature of the alleged misconduct and none is evident from the record. The Court will not construct or attempt to guess the basis for Petitioner's argument.

Petitioner also argues that his trial counsel was ineffective in failing to file a motion to suppress the witnesses' pretrial and in-court identifications of Petitioner. Such a motion would need to articulate how the identification procedure was impermissibly suggestive, but Petitioner has failed to do that. Therefore, Petitioner fails to establish that counsel was ineffective in failing to file a motion to suppress the victims' in-court and out-of-court identifications.

## I.  Ineffective Assistance of Appellate Counsel (Claim IX)

Petitioner next argues that appellate counsel was ineffective for failing to raise on direct appeal the claims he raised in his motions for relief from judgment. As discussed, the Court holds that appellate counsel was ineffective for failing to raise Petitioner's uncalled witnesses claim on direct appeal. With respect to Petitioner's remaining claims,

however, the Court has found they lack merit.  Consequently, Petitioner cannot establish that counsel was ineffective for omitting those other claims on direct review.

### J. Motion to Expand the Record (ECF No. 29)

Finally, Petitioner has filed a motion to expand the record to include documents related to James Rankin's death on June 30, 2013. Rankin died from a gunshot wound in an incident unrelated to Petitioner's case.

Under Rule 7(a) of the Rules Governing Section 2254 Cases, the district court may allow expansion of the record to include materials relevant to the determination of the habeas petition. The decision whether to expand the record is within the sound discretion of the district court. *See West v. Bell*, 550 F.3d 542, 551 (6th Cir. 2008). A fair adjudication of this case does not require expansion of the record to include documents relating to Rankin's death, which at best are only tangentially related to Petitioner's case. Accordingly, this motion is **DENIED**.

### IV. Conclusion

The Court concludes that Petitioner was denied his right to the effective assistance of trial and appellate counsel, which prejudiced him both at trial and on appeal. The state court's decision to the contrary was

50

an unreasonable application of clearly established Supreme Court precedent and one with which fair-minded jurists would not agree.

Accordingly, the Court **CONDITIONALLY GRANTS** the petition for writ of habeas corpus. The State must either release Petitioner or institute proceedings to retry him within 120 days of the filing date of this Order. If the State fails to do so, Petitioner may move for an unconditional writ seeking immediate release from custody.

Petitioner's Motion to Expand the Record, ECF No. 29, is hereby **DENIED**.

**IT IS SO ORDERED.**

DATED: March 31, 2025

BY THE COURT:

/s/Terrence G. Berg
TERRENCE G. BERG
United States District Judge

51